IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

H.G.,[1]

                Plaintiff,

vs.                                        Case No. 20-2303-SAC

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

                Defendant.

**MEMORANDUM AND ORDER**

This is an action appealing the denial of Social Security disability benefits.  Plaintiff filed her application for benefits on February 7, 2017, alleging that she has been disabled since January 13, 2017.  The administrative law judge (ALJ) conducted a hearing on April 3, 2019, considered the evidence, and decided on May 13, 2019 that plaintiff was not qualified to receive benefits.  This decision has been adopted by defendant.  This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. Standards of review

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had

---

[1] Plaintiff's initials are used to protect privacy interests.

"insured status" under the Social Security program.  See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.   See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229).  It does not require a preponderance of the evidence.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human

_Services_, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  _Lax_, 489 F.3d at 1084 (quoting _Zoltanski v. F.A.A._, 372 F.3d 1195, 1200 (10th Cir. 2004)).  The court reviews "only the sufficiency of the evidence, not its weight."  _Oldham v. Astrue_, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. The ALJ's decision (Tr. 9-25).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 10-11). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is

able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.  Id.  In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2022.  Second, plaintiff has not engaged in substantial gainful activity since January 13, 2017.  Third, plaintiff has the following severe impairments: multiple sclerosis; fatigue; anxiety disorder; and depression.

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Fifth, plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that: she is limited to occasionally climbing ramps and stairs and never climbing ropes, ladders or scaffolds; she can frequently balance, stoop, kneel, crouch, and crawl as opposed to constant; she should work in a

4

temperature-controlled environment; she should avoid concentrated exposure to irritants; she is limited to performing unskilled, non-detailed, routine, repetitive tasks; she can adapt to routine and simple work changes, make simple work-related decisions, and can perform work at a normal pace without production quotas.

Based upon the testimony of a vocational expert, the ALJ determined that plaintiff could not perform her past relevant work as an educational program director; academic advisor; and residence hall advisor, which were sedentary jobs. She, however, could work as a library assistant, photocopy machine operator and clerical router.

III. The denial of benefits shall be reversed and remanded.

Plaintiff argues in part that the RFC is not supported by substantial evidence.[2] Doc. No. 13, p. 27. The court concurs as to plaintiff's physical RFC as explained below.

A. Summary of the evidence

1. Lay sources

Plaintiff was born in 1978. She has a Masters Degree in Education and a job history working as an advisor and later as a university program director. These were sedentary positions. (Tr.

---

[2] Plaintiff also argues that the ALJ erred in finding that plaintiff did not meet the requirements of Listing 11.09. Doc. No. 13, p. 13. The court finds that substantial evidence supports the ALJ's decision that plaintiff has not shown the physical or mental impairments in functioning that would support a finding of disability under that listing.

68).  She is married and has a daughter who was born in January 2016.  Plaintiff last worked in January 2017.

Plaintiff has multiple sclerosis (MS) which was diagnosed in 2006.  Plaintiff has not had a major flare of MS symptoms requiring a large round of steroids since 2007.  But, she has minor flares. She testified that fatigue caused by MS is her number one obstacle to working.  (Tr. 44).  She also has neck pain, back pain and numbness which can be exacerbated by activity.  She attributes this to MS.  (Tr. 47, 62).  The record reflects numerous chiropractor visits.  In addition, plaintiff has issues with memory loss and concentration because of MS.  (Tr. 296).

According to plaintiff (Tr. 47-49), on a typical day she helps her daughter get ready for preschool, assuming plaintiff feels well.[3]  Plaintiff fixes her own breakfast.  She maybe runs one errand and then returns home and rests for a couple of hours, so that she will feel well enough to be active with her daughter when she gets home.  Plaintiff estimated that twice a week on average should needs to lay down twice during the day. (Tr. 61). Plaintiff can drive, cook easy meals, and shop now and then.  She can pick up the house and do some laundry, although she may require a break while doing so. Part of plaintiff's routine is exercise.  (Tr.

---

[3] Plaintiff's daughter started preschool, five days a week, in Fall 2018.  Prior to that plaintiff had assistance with her daughter's daycare two or three days a week.  (Tr. 58).

274).  She exercises almost every day on the advice of her medical care providers.

Plaintiff testified that she could stand up for 25 or 30 minutes, walk for 20 minutes, sit for 45 minutes.  (Tr. 50-51). She can lift her daughter who weighs 35 pounds, but not repeatedly and not without suffering pain and fatigue.  (Tr. 62).

In recent years, plaintiff has made a long plane trip to Japan, where her husband is from, and a plane trip to Alabama to see her parents.  She has suffered from pain and exhaustion during and after those trips.  (Tr. 64-66).

The function reports filled out by plaintiff and her husband are generally consistent with the above recitation.  Doc. No. 12-1, Ex. 4E, 5E, 8E and 9E.

A supervisor of plaintiff from 2007-2009 wrote that plaintiff's job performance declined because plaintiff required frequent breaks because of extreme fatigue and to take days and hours off work to recover from physical exhaustion.  (Tr. 450). She also noted that plaintiff sometimes struggled to focus, meet timelines, and attend to detail.  Id.

     2. Medical evidence

       a. State agency consultants

Dr. Richard Kaspar concluded in August 2017 that plaintiff had a moderate limitation in her ability to concentrate, persist

or maintain pace,[4] but he considered plaintiff's other mental limitations as mild or none.  He noted that plaintiff does a full range of daily activities "as physical symptoms allow."  (Tr. 82).

Dr. Philip Rosenshield stated on March 12, 2018 that plaintiff's concentration was moderately impaired but that plaintiff no other mental limitations which were greater than mild. He noted that plaintiff's MS is "quite stable with no relapse since 2007."  (Tr. 99).

Dr. Robert Hughes concluded in July 2017 that plaintiff could occasionally lift and/or carry 20 pounds, 10 pounds frequently; that she could stand and/or walk 6 hours in an 8-hour day and sit about 6 hours. (Tr. 83).  He said plaintiff had manipulative limitations in the area of fine, as opposed to gross, manipulation. (Tr. 84).  Dr. Hughes appeared to rely upon two notes from one of plaintiff's treating physicians, Dr. Sharon Lynch, and plaintiff's activities of daily living.  He noted that those activities include "naps/rest during day" and that plaintiff experiences "hand numbness" with computer activity.  (Tr. 85).

Dr. Charles Lee reviewed the records and on March 13, 2018 found less severe physical restrictions than those recorded in Dr. Hughes' assessment.  (Tr. 101-02).  He concluded, inter alia, that there were no manipulative limitations and that plaintiff could do

---

[4] He concluded that plaintiff was capable of understanding and remembering simple to some intermediate instructions.  (Tr. 86).

medium work, but that a light work RFC was not unreasonable.  (Tr. 101).

b. <u>Dr. Sharon Lynch</u>

Dr. Lynch was a treating physician for plaintiff for several years.  Her records reflect that plaintiff consistently complained of fatigue, neck pain, lack of concentration, and numbness.  E.g., Tr. 368, 373, 429, 502, 509.  In one note Dr. Lynch and a colleague characterized plaintiff's MS as "stable" and suspected that the majority of plaintiff's symptoms "are related to previous lesions and now fatigue with an infant."  (Tr. 370).  She also noted on May 25, 2017 that there were no major MRI changes from 2010.  (Tr. 379).

Dr. Lynch completed a statement in 2017.  (Tr. 409-10).  The statement says that she advised plaintiff to cease her sedentary job on January 12, 2017.  It lists plaintiff's symptoms as fatigue, pain, weakness, numbness, headaches, confusion, decreased concentration and anxiety.  The statement also shows that Dr. Lynch marked a box indicating that plaintiff was capable of sedentary, clerical or administrative work.  Dr. Lynch completed a shared leave request form in January 2017.  The form indicates that plaintiff may have exacerbations that require her to be off work for treatment and recovery time which would necessitate intermittent leave six times a year for as much as five days at a time.  (Tr. 411).

c. <u>Stacey Anderson and Dr. Dan Severa</u>

Stacey Anderson, a physician assistant, treated plaintiff on several occasions.[5]  She listed the same symptoms listed in Dr. Lynch's records.  On October 31, 2017, Anderson and Dr. Dan Severa signed a statement (Tr. 451) indicating that plaintiff had been a patient for 10 years; that she had MS which caused significant fatigue, numbness and weakness in grasping objects as well as deficits in concentration and recall of information.  It remarks that plaintiff feels she could work up to 5 days a week if she could rest for an hour at least 1 or 2 times during a 4 to 6-hour workday.

Anderson also completed a form in January 2019 which indicates that plaintiff can work one hour per day; stand for 15 minutes at a time or 60 minutes in a workday; sit for 60 minutes at a time or 2 hours in a work day; lift 5 pounds on an occasional or frequent basis; seldom do fine or gross manipulations with her hands; that plaintiff has had constant pain and fatigue since January 19, 2017; and that plaintiff would need to be absent from work 8 to 10 days per month.  Doc. No. 12-1, Ex. 10F.

---

[5] SSR 06-3p, 2006 WL 2329939, clarifies that opinions and other evidence from medical sources such as a physician assistant are important, capable of outweighing the opinion of an "acceptable medical source," such as a licensed physician, and "should be evaluated on key issues such as impairment severity and functional effects." <u>Id.</u> at *3-5.

### d. Dr. Jeffrey Kaplan

On September 17, 2018, plaintiff was examined by Dr. Jeffrey Kaplan.  Dr. Kaplan reviewed plaintiff's medical history and directed various treatments and tests.  On February 28, 2019, Dr. Kaplan signed a form which listed very similar restrictions to those Stacey Anderson listed in January 2019.  Doc. No. 12-1, Ex. 11F.

### e. Dr. Blake Stepanovich

Dr. Blake Stepanovich evaluated plaintiff on February 24, 2018.  Doc. No. 21-1, Ex. 8F.  He found that plaintiff had 20 pounds of grip strength with dexterity preserved and full range of motion in her joints.  Plaintiff's gait and station were stable and there was no difficulty with orthopedic maneuvers.  Plaintiff reported numbness in her hands, weakness and pain.

### f. Dr. Marc Qillen

Dr. Marc Quillen did a consultative psychological examination on July 6, 2017.  Plaintiff's statements to Dr. Quillen appeared consistent with her reports to other doctors and he considered her a reliable historian.  (Tr. 402).  Dr. Quillen's opinion was that plaintiff was disabled because of MS's impact upon her physical and mental health.  (Tr. 406).  Strictly regarding plaintiff's depression, Dr. Quillen concluded that plaintiff was not able to sustain concentration and persist at work at a reasonable pace.

(Tr. 406).   Otherwise, he determined that plaintiff's mental abilities were satisfactory for employment.

B. Substantial evidence does not support the RFC.

The court generally gives deference to an ALJ's evaluation of a claimant's alleged symptoms.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  But, the ALJ's findings must be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010)(quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)).  The court must consider the following factors:  1) whether plaintiff has identified an impairment that produces fatigue or other symptoms by objective evidence; 2) if there is a loose nexus between the impairment and plaintiff's symptoms; and 3) if so, whether considering all the evidence, objective and subjective, the symptoms are in fact disabling.  See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).

Here, the first two factors are satisfied.  So, the court looks at all the evidence to determine whether substantial evidence supports the ALJ's decision that the symptoms are not in fact disabling.  The court may look at the following factors:  daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures taken to

relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. See 20 C.F.R. § 404.1529(c)(3)(i-vii); Cullen v. Astrue, 480 F.Supp.2d 1258, 1264 (D.Kan. 2007)(evaluating a fatigue claim).

It appears that the ALJ discounted plaintiff's claims of fatigue for the following reasons. First, the ALJ concluded that plaintiff's allegation of disability is "inconsistent with the evidence in the record, especially the medical records." (Tr. 21). The ALJ, however, does not specify the statements in the medical records upon which he relies. Earlier in the decision, he notes comments that plaintiff was "doing well" on certain MS medication in the records of Dr. Lynch as summarized in the report of Dr. Kaplan, as well as comments from Dr. Lynch's records that plaintiff was "doing well" on Tecfidera on May 25, 2017 (Tr. 377) and "pretty well" on December 14, 2018 (Tr. 509).[6] He does not show that these comments bear relation to plaintiff's fatigue, particularly near or after the onset date of disability. The bulk of Lynch's records, as well as the interpretation of those records by Dr. Lynch and Dr. Kaplan, indicate that the medical records referred to by the ALJ at Tr. 21, are not inconsistent with a claim of disabling fatigue. In this same vein, Stacey Anderson, a long-time treating source, stated on July 18, 2017, that "[f]or the

---

[6] There are also contrary references which specifically refer to fatigue; for example, "doing okay but still has problems with fatigue" (Tr. 502) and, "lots of trouble with fatigue." (Tr. 497).

past 18 months, [plaintiff] has had an exacerbation of her symptoms that include hand numb[n]ess, vision changes, exhaustion, tingling in legs, mental confusion/fog causing forgetfulness and neck pain." (Tr. 449). The ALJ may have been referring to the findings of Dr. Stepanovich which he summarized earlier in his decision. The ALJ, however, does not describe how those findings are contrary to plaintiff's claims of fatigue or lack of concentration.

Second, the ALJ states that plaintiff's testimony and written statement regarding her symptoms are not supported by a medical basis or examination findings in plaintiff's treatment records "with regard to walking, standing, sitting, and need to lie down and rest constantly at unpredictable times." (Tr. 21). As noted already, MS is a medical basis for plaintiff's fatigue, numbness and lack concentration, among other symptoms. With regard to examination findings, the ALJ does not discuss specific findings which are contrary to plaintiff's claims regarding exhaustion and the need to rest during the day. It is also noteworthy that the medical sources who treated plaintiff's MS have issued reports which support plaintiff's claims of disabling fatigue. Nor is it clear which findings the ALJ considers inconsistent with plaintiff's claims regarding numbness and concentration, particularly since the ALJ gave significant weight to opinions which acknowledged impairments in those areas. (Tr. 21-

14

22)(referring to state agency consultants Hughes, Rosenshield and Kaspar).

Third, the ALJ remarked that plaintiff's activities of daily living are inconsistent with her claims of disabling symptoms. He specifically referenced plaintiff's care for her young daughter and plaintiff's trips to Japan and Alabama. (Tr. 21). But, plaintiff has had significant help from her husband, daycare providers and a preschool to care for her young daughter and plaintiff testified that she still requires daily naps. Also, plaintiff testified that her trips, once to Japan to visit her in-laws and once to Alabama to visit her parents, were exhausting and painful for her. The ALJ did not acknowledge or appear to consider this evidence, or rely upon evidence to the contrary. Plaintiff's other household chores, occasional errands, and her doctor-ordered exercise do not provide substantial evidence to deny the disabling impact of plaintiff's fatigue. Cf., Tate v. Colvin, 2016 WL 4679942 *2-4 (D.Kan. 9/7/2016)(the fact that plaintiff did yoga and stretching, walked on a treadmill, prepared meals, ran errands, cared for a dog, cared for her personal hygiene, did simple housework, drove a car, shopped and spent time with others does not establish that plaintiff can work at a competitive level over an 8 hour day, or provide a basis for discounting a doctor's opinions); see also, 20 C.F.R. § 404.1572(c)(activities such as taking care of yourself, household tasks, hobbies, therapy, club

activities or social programs are generally not considered substantial gainful activity). This is not a question of whether plaintiff has some capacity to work or whether there's an inconsistency within plaintiff's testimony which causes one to doubt plaintiff's other testimony regarding her symptoms.[7] This is a question of whether she has the capacity for substantial gainful employment. Plaintiff's activities of daily living do not provide substantial evidence that plaintiff has that capacity, particularly because of her fatigue.

Fourth, the ALJ cites the opinions of state agency consultants to support his RFC findings.[8] The opinions of Dr. Hughes and Dr. Lee address plaintiff's physical condition. The ALJ gave their opinions "significant weight." (Tr. 21). The doctors refer to MRIs of plaintiff's brain which do not show new lesions and recite, but do not discuss, Dr. Lynch's statement that the majority of plaintiff's symptoms are related to previous lesions and fatigue with her infant. The extent to which MS symptom progression is linked to lesion formation or childbirth is not discussed by Dr. Hughes and Dr. Lee or elsewhere in the record.

---

[7] The ALJ did not explicitly find that plaintiff's testimony was internally inconsistent. The ALJ's position was that plaintiff's allegations were inconsistent with the "evidence in the record, especially the medical records" cited in his decision. (Tr. 21). The ALJ, however, does not cite medical records which contradict plaintiff's claims of fatigue.

[8] Opinions of examining physicians are generally given more weight than the opinions of nonexamining physicians who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

Dr. Hughes and Dr. Lee's opinions do not discuss the help
plaintiff receives in child care or the limited nature of her
activities of daily living.  The opinion of Dr. Hughes notes that
plaintiff takes naps and rests during the day and that she has
fatigue with all activities.  He does not explain why he finds
such nap-taking and fatigue is consistent with full-time light
employment with manipulative limitations.  Dr. Lee finds that
plaintiff's activities of daily living are "grossly inconsistent
with any objective evidence" of physical limitations and that
plaintiff can perform medium employment with no manipulative
limitations.  (Tr. 102).  He refers to plaintiff's MS being stable,
the absence of new lesions, and a physical examination which does
not appear to measure fatigue.  He does not explain why plaintiff's
activities of daily living are inconsistent with these objective
findings, particularly since many of the findings are not related
specifically to fatigue or numbness.  Drs. Hughes and Lee find
different levels of physical limitations (light versus medium) and
manipulative limitations (limited fine manipulation versus no
restriction).  The ALJ does not address these differences or
explain why he settled upon light employment and no manipulative
limitations for plaintiff's RFC.

The failure of Dr. Hughes and Dr. Lee to closely and
affirmatively link their findings to substantial evidence also
infects the ALJ's analysis.  In the ALJ's words, he relied upon

their opinions because "they are supported by the relevant medical records . . . and consistent with the overall evidence in the record." (Tr. 22). The ALJ, however, like Drs. Hughes and Lee, does not adequately describe what those records are and why they are supportive. Nor does he explain why he accepted some of their findings, but not others. The court concludes that Dr. Hughes and Dr. Lee's opinions do not provide substantial evidence in support of the RFC in this case.

Finally, the ALJ discussed the opinions of the treating sources. He rejected the opinions of Stacey Anderson, Dr. Dan Severa,[9] and Dr. Jeffrey Kaplan on the grounds that the opinions were not supported by findings in the treatment notes or other medical records. (Tr. 22). The court, however, has previously noted that the medical records contain numerous references to fatigue, numbness and lack of concentration. In addition, Anderson remarked on July 18, 2017 that these symptoms had exacerbated in the last 18 months. On the other hand, the ALJ does not identify or describe records that specifically and affirmatively show that plaintiff's claims of fatigue, numbness and lack of concentration are insubstantial.

The ALJ stated that he gave significant weight to Dr. Lynch's opinions "because they are supported by the objective medical

---

[9] Dr. Severa signed on to a statement by Anderson. (Tr. 451).

findings in her own treatment notes, and are consistent with the overall evidence in the record." (Tr. 22). The ALJ also noted that Dr. Lynch was plaintiff's long-time treating neurologist. The court finds Dr. Lynch's opinion unclear. In January 2017, Dr. Lynch advised plaintiff to cease working at a sedentary job. (Tr. 409). On the same form, Dr. Lynch indicated that plaintiff was capable of a sedentary, clerical position. Id. And on a form to apply for shared leave, Dr. Lynch indicated that plaintiff may have the necessity to be off work for as long as 5 days, six times a year. (Tr. 411). This does not provide clear or substantial support for the conclusion that plaintiff is capable of light work, as stated in the RFC, or even sedentary work.

In summary, the ALJ did not properly support his evaluation of plaintiff's symptoms and this invalidates his RFC analysis.

IV. <u>The court will not remand for an immediate award of benefits</u>.

Plaintiff has requested a remand directing the immediate award of benefits. It is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits. <u>Farmer v. Astrue</u>, 832 F.Supp.2d 1293, 1302 (D.Kan. 2011). Relevant factors to consider are the length of time the matter has been pending and whether remand for additional fact-finding would serve a useful purpose. Id. A decision to award benefits directly should be made only when the administrative record has been fully developed and when substantial and

uncontradicted evidence in the record as a whole indicates that
the claimant is disabled and entitled to benefits.  Id.

    The length of time this matter has been pending may seem long
but, to the court, it does not seem unusually long for this type
of case.  In addition, the court believes that additional fact-
finding could serve a useful purpose.  Therefore, the court shall
not remand for an immediate award of benefits.

V. Conclusion

    As explained above, the court finds that the ALJ did not
closely and affirmatively link his RFC findings to substantial
evidence, particularly as it relates to fatigue, numbness and lack
of concentration.  The ALJ made vague references to the medical or
overall evidence to support or reject various positions.  He relied
upon terse and conclusory opinions from the state agency
consultants, Dr. Hughes and Dr. Lee.  He dismissed opinions from
treating sources without citing specific contrary evidence.  He
considered activities of daily living without acknowledging the
relevant context for such activities, including long trips and
child care.  He did not address differences in the opinions of Dr.
Hughes and Dr. Lee vis-à-vis the RFC and he gave "significant
weight" to Dr. Lynch's cursory and unclear opinions regarding
plaintiff's ability to do sedentary work.

    Therefore, the court directs that the decision of the
Commissioner be reversed and that judgment be entered pursuant to

sentence four of 42 U.S.C. § 405(g) remanding the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated this 12th day of February 2021, at Topeka, Kansas.

s/Sam A. Crow_____
U.S. District Senior Judge